UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-61463-CIV-BSS

JANET FRANCIS,

    Plaintiff,

vs.

MSC CRUISES, S.A.,

    Defendant.

_____/

## ORDER

THIS CAUSE is before the Court on the Motion for Summary Judgment filed by MSC Cruises, S.A. (DE 43) and the Motion for Partial Summary Judgment filed by Plaintiff Janet Francis (DE 41). The Court has carefully considered the motions, and the record, and is otherwise fully advised. For the reasons that follow, MSC's Motion for Summary Judgment (DE 43) is **GRANTED** and Francis's Motion for Partial Summary Judgment (DE 41) is **DENIED**.

### I. FACTS

Plaintiff Janet Francis ("Plaintiff" or "Francis") and her companion Regina Kenneweg ("Kenneweg") were passengers on a cruise ship named the Divina operated by MSC Cruises, S.A. ("Defendant" or "MSC"). In the evening of July 10, 2017, Francis and Kenneweg went to a self-service buffet restaurant on Deck 14 of the ship. (DE 41-5, Deposition of Janet Francis ("Francis Dep.") at 61-63; DE 41-7, Deposition of Regina

1

Kenneweg ("Kenneweg Dep.") at 30). As Francis and Kenneweg headed toward the buffet, they noticed food items on the floor of the passageway. (Francis Dep. at 63; Kenneweg Dep. at 30-31). Francis stated that the floor was "nasty and dirty," which caused her to walk with a "heightened awareness." (Francis Dep. at 67).

Francis spent 10 to 15 minutes at the buffet. (Id. at 63; DE 46: 7, Pl.'s Add'l Facts in Opp'n ¶ 19). Upon exiting the buffet, Francis and Kenneweg approached the same passageway where they previously had observed spilled food, and they remarked to one another that the area had been cleaned and food was no longer on the floor. (Francis Dep. at 63, 68; Kenneweg Dep. at 17, 37-38). Francis agreed that a cleaning occurred "in the 10 to 15 minutes" during which she was at the buffet. (Francis Dep. at 78). However, the possibility that fruit remained on the floor caused Francis to maintain a "heightened level of awareness" on the way out of the buffet even though the floor appeared clean. (Id. at 68, 74). Despite "actively looking for fruit on the floor" (Id. at 74), and "being cautious" (Kenneweg Dep. at 42), Francis slipped on a piece of watermelon and fell.

Neither Francis nor Kenneweg knew how long the watermelon had been on the floor, or where it had come from (Francis Dep. at 69-70; Kenneweg Dep. at 45-46), but Kenneweg assumed that the fruit spilled after the passageway had been cleaned (Kenneweg Dep. at 46). Kenneweg further testified that the fruit was not rotten or dried out. (Id. at 47). Although the record reveals that that one or more crewmembers were in the general vicinity of the buffet, there is no evidence that the crewmembers had seen the watermelon, or were near the area of the spill at the relevant time. (DE 41-4, Deposition of Sioni Marana ("Marana Dep.") at 26). The only housekeeper in the area was inside a

bathroom at the time and did not witness the slip-and-fall incident. (Id. at 30-31). Francis recalled passing some crewmembers on the deck, but they were "talking among themselves." (Francis Dep. 83-84; Kenneweg Dep. at 15).

Discovery did not reveal evidence of prior slip-and-falls involving food or beverages in the passageways leading to the buffet area on the Divina, or any of its sister ships, in the three years prior to the incident. (DE 43-3, Def.'s Supp. Resp. to Pl.'s 2d Interrogs.). Indeed, the record contains no evidence of substantially similar incidents of any kind. Nevertheless, MSC was generally aware that food can be dropped on the floors of its ships, and that dropped food can be a slipping hazard. (DE 41-6, Deposition of Ryan Allain ("Allain Dep.") at 88-89). Moreover, Francis's expert witness, Dr. Reza Vaghar, opined that the slip-resistance of the deck on which the fall occurred was below industry standard and was generally unsafe. (DE 41-8, Deposition of Dr. Reza Vaghar ("Vaghar Dep.") at 26-28, 59-60).[1]

Based on the slip-and-fall, Francis filed a one-count Complaint alleging negligence in federal court. Both parties moved for summary judgment on the question of whether MSC had sufficient notice (and therefore a duty to warn) of the purportedly dangerous condition that Francis encountered. This matter is now ripe for review.

## II. **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] Although the admissibility of Dr. Vaghar's expert opinion is subject to a pending motion to strike (DE 42), the Court will consider the testimony for the purpose of summary judgment because the testimony would not alter the Court's ultimate conclusion.

56(a).  At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. SEC v. Monterosso, 756 F.3d 1326, 1333 (11th Cir. 2014). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Carlson v. FedEx Ground Package Sys., Inc., 787 F.3d 1313, 1317–18 (11th Cir. 2015) (quoting Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.1997)). "This is because 'the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Id. (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once this initial burden is met, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039, 1050 (11th Cir. 2015). But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

4

Applying these standards to the present case, the Court concludes that no genuine dispute as to material fact exists and that summary judgment in favor of MSC is warranted.

## III. ANALYSIS

It is axiomatic that "[a] carrier by sea is not liable to passengers as an insurer, but only for its negligence." Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1334 (11th Cir. 1984). To determine whether MSC was negligent, the Court applies the standards recently summarized in Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 720 (11th Cir. 2019):

> Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters. See Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1320–21 (11th Cir. 1989). "In analyzing a maritime tort case, [we] rely on general principles of negligence law." Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting Daigle v. Point Landing, Inc., 616 F.2d 825, 827 (5th Cir. 1980)).
>
> To prevail on a negligence claim, a plaintiff must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." Id.

Id. (alteration in original).

The summary judgment motions before the Court place at issue the element of duty. In the maritime context, the shipowner owes passengers a duty of reasonable care. Id.; Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630 (1959)). This duty, however, extends only as far as "known dangers that are not open and obvious." Guevara, 920 F.3d at 720 n. 5 (citation omitted). In addition,

> [t]his standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of [a] risk-creating condition,

at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure." Keefe, 867 F.2d at 1322. In this circumstance, a cruise ship operator's liability "hinges on whether it knew or should have known" about the dangerous condition. Id.

Guevara, 920 F.3d at 720 (alteration in original) (footnote omitted).

The Eleventh Circuit has identified two alternative ways in which a maritime plaintiff can establish constructive notice sufficient to trigger a duty to warn: (1) "with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures,'" id. (alteration in original) (quoting Monteleone v. Bahama Cruise Line, Inc., 838 F.2d 63, 65 (2d Cir. 1988)); and (2) "with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident,'" id. (quoting Jones v. Otis Elevator Co., 861 F.2d 655, 661–62 (11th Cir. 1988)).

Here, Francis does not claim that MSC had actual notice of the offending watermelon. Thus, liability in this case hinges on whether MSC was constructively aware of the hazardous condition that caused Francis's slip-and-fall.

### A. Evidence that the Defective Condition Existed for a Period of Time Sufficient to Invite Corrective Measures

The Court first evaluates the length of time that the dangerous condition existed. In this regard, MSC, as the moving party, has identified portions of the record demonstrating the absence of a genuine dispute of material fact. MSC explains that neither Francis nor any other witness know the origin of the offending watermelon, nor how long it was present in the passageway. MSC further points out that the passageway leading to the buffet on Deck 14 had been thoroughly cleaned, at most, 10 to 15 minutes

6

prior to the slip-and-fall. MSC argues that the record contains no evidence that the hazard encountered by Francis had been present for a period of time sufficient to impute constructive notice to MSC.

In response, Francis presents testimonial evidence from MSC's corporate representative that MSC had generally been aware that food could be spilled on its decks, and that food could be a slipping hazard. Francis further proffers her expert's opinion that the slip-resistance of the buffet deck was below maritime standards and was unsafe.

Considering the undisputed facts in light of applicable case law, the Court concludes that Francis is unable to establish an essential element of her negligence claim—duty—and thus, has not made a "showing sufficient to permit the jury to reasonably find on [her] behalf." Urquilla-Diaz, 780 F.3d at 1050.

Specifically, Francis's "evidence," in large part, is nothing more than an expression of commonsense—that general risks are generally foreseeable. Standing alone, that evidence is insufficient to generate a genuine and material factual conflict. Indeed, the "general foreseeability" theory of liability has been roundly rejected by federal courts because it would essentially convert a carrier into an insurer of passenger safety. See, e.g., Taiariol v. MSC Crociere S.A., 677 Fed Appx 599, 601–02 (11th Cir. 2017) (holding that generic "watch your step" sticker on the step did not "raise an issue of fact as to whether the defendant had notice of the nosing's slippery condition"); Weiner v. Carnival Cruise Lines, 2012 WL 5199604, at *4 (S.D. Fla. Oct. 22, 2012) (stating that "Weiner cannot avoid summary judgment on some generalized theory of foreseeability that is divorced from the particular events in question") (citing Bencomo v. Costa Crociere,

S.P.A. Co., Case No. 10–cv–62437–WPD, ECF No. 18 at 4–5 (S.D. Fla. Nov. 14, 2011) ("an argument that wet decks occurred regularly and thus were 'foreseeable' is not sufficient to create constructive notice"), aff'd 476 Fed. Appx. 232, 232–33 (11th Cir. 2012); Stewart–Patterson v. Celebrity Cruises, Inc., 2012 WL 2979032, at *3 (S.D. Fla. July 20, 2012) (stating that "maritime law does not support a stand-alone claim based on" cruise line's alleged duty to take actions to reduce or eliminate foreseeable risks before they manifest, where such claim is "unconnected to [passenger's] specific accident")).

For similar reasons, the expert opinion proffered by Francis, that the slip-resistance of the deck leading to the buffet area on the Divina was below industry standards, cannot defeat summary judgment. The Eleventh Circuit has emphasized that knowledge of a physical characteristic is insufficient to demonstrate notice of a specific hazard; the pertinent issue is not "whether the defendant had notice of an object or its physical specifications, but instead, whether the defendant had notice of a risk-creating condition." Taiariol, 677 Fed. Appx. at 602 (concluding that cruise operator's knowledge of physical properties of step was insufficient to impute constructive notice that nosing was dangerously slippery, given lack of substantially similar incidents) (citing Sorrels, 796 F.3d at 1286). In this case, there is no evidence that the slip-resistance properties of the passageway had caused any accidents, let alone substantially similar accidents. Accordingly, it would be insufficient to place MSC on constructive notice of the specific hazardous condition alleged here, namely, the presence of a wayward piece of fruit.

In sum, the record before the Court lacks evidence regarding the length of time the hazardous condition was present. Francis, therefore, has failed to demonstrate a triable

8

issue on this basis. See, e.g., Plott v. NCL Am. LLC, 2018 WL 8369105, at *9 (S.D. Fla. Nov. 30, 2018) (granting summary judgment to cruise operator where "Plaintiff . . . presented no admissible record evidence that the alleged condition—liquid on the Conservatory floor—was present for a sufficient interval of time such that Defendant could have taken corrective action"); Bujarski v. NCL (Bahamas) Ltd., 209 F. Supp. 3d 1248, 1251 (S.D. Fla. 2016) (granting summary judgment for defendant cruise line because, among other things, plaintiff had "provided no evidence of how long the puddle of water was present on the deck").

The conclusion that MSC lacked sufficient notice is reinforced by reasonable inferences that may be drawn from the facts in the record. As previously set forth, a thorough cleaning of the buffet passageway had been undertaken in the 10 to 15 minutes prior to the incident. The fruit was not rotten or dried out. Francis's travel companion (Kenneweg) inferred that the watermelon had been dropped after the cleaning, and necessarily, within a very narrow timeframe relative to Francis's slip and fall. And equally significant, despite Francis and Kenneweg's "heightened" vigilance, "cautious" approach, and "active[]" search for food and debris on the floor, the offending watermelon was not detected by either Francis or Kenneweg. The Court, therefore, concludes that if any reasonable inference may be drawn from this record, it is that the piece of fruit was either so small, or so well obscured, that MSC would have been similarly unable to detect it, particularly given the abbreviated timeframe at issue here.

**B.      Evidence of Substantially Similar Incidents**

The occurrence of substantially similar incidents may also be used to establish

9

constructive notice in a maritime tort case. Because Francis has not demonstrated the existence of any substantially similar incidents, she cannot succeed on this prong either. See, e.g., Gorczyca v. MSC Cruises, S.A., 715 Fed. Appx. 919, 922 (11th Cir. 2017) (affirming summary judgment in favor of cruise operator where plaintiff "provided no evidence of any prior accident reports in the theater due to allegedly faulty LED lights or the lack of handrails"); Taiariol, 677 Fed. Appx. 599 (affirming summary judgment in favor of cruise operator where record lacked evidence of substantially similar incidents involving a step's nosing); see also Klein v. Seven Seas Cruises S. DE R.L., 2017 WL 3405531, at *3–4 (S.D. Fla. Aug. 7, 2017) (granting summary judgment where plaintiff could not "point to any other similar incidents, whether in the 14 years before the strip lighting was installed or in the three years since."); Cohen v. Carnival Corp., 945 F. Supp. 2d 1351, 1355 (S.D. Fla. 2013) (finding no evidence of notice where plaintiff cannot offer "any accident reports, passenger comment reviews or forms, or reports from safety inspection").

Being unable to proffer any affirmative evidence of prior similar incidents, Francis instead attempts to impugn MSC's recordkeeping practices and argues that MSC "hasn't disclosed any prior reports of slip and falls" and MSC "didn't look for incident information," and "relied on its lawyers ('you guys,' i.e., the Maltzman firm) to look for the information" (DE 46 ¶ 8).

These statements reveal a fundamental misunderstanding of the burden of proof at the summary judgment stage. Following MSC's motion arguing the absence of a genuine dispute of material fact concerning substantially similar incidents, the burden

shifted to Francis to demonstrate the existence of facts sufficient to generate a triable issue. She has failed to do so. Rather, Francis appears to imply that discovery violations by MSC prevented her from collecting the evidence necessary to satisfy her burden. Yet, the federal rules provide appropriate mechanisms for dealing with such matters. Hints and innuendo of discovery misfeasance, such as those interposed by Francis, cannot defeat summary judgment and are not properly considered at this juncture.

### C. Whether the Dangerous Condition Was Open and Obvious

Finally, the Court reiterates that "[a]n operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious." Guevara, 920 F.3d at 720 n. 5. Applying this precept, but without deciding the issue,[2] the Court expresses its concern that, even if MSC had notice of the allegedly dangerous condition, it would have been "open and obvious" to Francis and, therefore, MSC would have had no duty to warn her about it in any event.

More particularly, Francis stated in her deposition that she was aware of the "nasty and dirty" condition of the passageway, which was filled with food and debris, and as a consequence, walked "cautious[ly]," and with a "heightened level of awareness" to and from the buffet area, "actively looking for fruit on the floor." Under these circumstances, a warning from MSC would have been of no benefit to Francis. Federal law does not require

---

[2] The parties have not raised this issue. Cf. Frasca v. NCL (Bahamas), Ltd., 654 Fed. Appx. 949, 955 (11th Cir. 2016) (reversing magistrate's sua sponte granting of summary judgment, stating: "A court may grant a motion for summary judgment on grounds not raised by a party only '[a]fter giving notice and a reasonable time to respond . . . .'") (quoting Fed. R. Civ. P. 56(f)). Given the Court's ruling, no further briefing on this issue will be necessary.

11

a carrier to warn a passenger of a dangerous condition of which he or she is already aware. See Leroux v. NCL (Bahamas) Ltd., 743 Fed. Appx. 407, 410 (11th Cir. 2018) (affirming summary judgment for cruise line where plaintiff admitted that she saw a raised threshold over which she tripped and saw a crewmember mopping the floor with a bucket nearby, reasoning that "Plaintiff simply failed to negotiate a known and obvious hazard").

## IV.  CONCLUSION

For the foregoing reasons, MSC's Motion for Summary Judgment (DE 43) is **GRANTED** and Francis's Motion for Partial Summary Judgment (DE 41) is **DENIED**.[3]

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 5th day of September 2019.

BARRY S. SELTZER
United States Magistrate Judge

Copies via CM/ECF to:

All counsel of record

---

[3] Although Francis moves for partial summary judgment on the issue of pre-suit notice, as well as other aspects of her negligence claim, the Court need not address these matters here given the Court's dispositive ruling in favor of MSC on the element of duty.