UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 18-61463-CIV-MORENO

JANET FRANCIS,

    Plaintiff,

vs.

MSC CRUISES, S.A.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant MSC Cruises, S.A. moves for summary judgment on the Plaintiff Janet Francis' remaining negligent maintenance and design theories. Because MSC Cruises was not aware of the alleged dangerous condition, the unreasonably slippery deck material onboard the *MSC Divina*, MSC Cruises' motion for summary judgment is granted.

### I.    PROCEDURAL HISTORY

Plaintiff Janet Francis slipped and fell on a piece of watermelon onboard the Defendant MSC Cruises' cruise ship, the *MSC Divina*. The parties previously consented to the Magistrate Judge to conduct all further proceedings in the case, including trial. *See* 28 U.S.C. § 636(c)(1). Ultimately, the Court granted MSC Cruises' first motion for summary judgment, finding that Francis failed to submit sufficient evidence to show that MSC Cruises had notice of the alleged dangerous condition, the piece of watermelon on the floor. The Eleventh Circuit affirmed in part and reversed in part—affirming the grant of summary judgment on Francis' failure to warn theory and reversing the grant of summary judgment on her negligent maintenance and negligent design

theories. *See Francis v. MSC Cruises, S.A.*, 835 Fed. Appx. 512, 514 (11th Cir. 2020).[1] The Eleventh Circuit reasoned that summary judgment was inappropriate on the negligent maintenance and negligent design theories because it was done *sua sponte*, without notice to Francis, in violation of Federal Rule of Civil Procedure Procedure 56(f). *Id.* at 518. The Eleventh Circuit added that it "expressed no opinion about whether MSC [Cruises] can withstand summary judgment review on these grounds on remand." *Id.* at 518 n. 4. MSC Cruises now moves for summary judgment on Francis' remaining negligence theories.

## II. BACKGROUND

Francis was a passenger onboard the *Divina* on July 10, 2017 when she and a travel companion, Regina Kenneweg went to a self-service buffet. To get to the buffet, they walked through a passenger corridor outside the buffet on their way to the buffet. At that time, they noticed that the floor was dirty but did not notify any MSC Cruises personnel of the floor's condition. They both made it the buffet without incident. After leaving the buffet, they traversed the same passenger corridor. Despite that it appeared that the corridor had been cleaned, they walked through the corridor with extra caution, actively looking for more fruit on the floor. While walking through the corridor, Francis slipped on a piece of watermelon.

For her remaining theories of negligent maintenance and negligent design, Francis claims that MSC Cruises breached its duty to her by (1) "[f]ailing to reasonably inspect the deck material, discover it was unreasonably slippery, and make it safer" (D.E. 75 ¶ 96 f.) (negligent maintenance) and (2) "[c]hoosing and/or approving a deck material that was unreasonably slippery" and "[c]hoosing and/or approving a deck material that was unreasonably slippery when food and/or

---

[1] In its opinion, the Eleventh Circuit noted that Francis filed a one-count negligence complaint against MSC Cruises, which "alleg[ed] three different theories of negligence: negligent design of the corridor's floor, negligent maintenance of the corridor's floor, and negligent failure to warn about the slip hazard [a piece of watermelon on the floor]." *Francis*, 835 Fed. Appx. at 515.

2

liquids was on it." *Id.* ¶ 96 d-e (negligent design). Francis points to three pieces of evidence that purportedly show that MSC Cruises had notice of the alleged dangerous condition, the unreasonably slippery deck material: (1) the deck material's coefficient of friction fell below industry standards; (2) an undisclosed response to an interrogatory in a closed, 2014 case that referenced a safety video played onboard the *Divina* that warned passengers that decks can be slippery when "water, food, etc. is on them"; and (3) MSC Cruises' policies requiring crewmembers that are notified of a slipping hazard to address and mitigate the hazard as quickly as possible, including MSC Cruises' instructions to crewmembers to regularly patrol walkways to ensure that obstacles are removed and slippery surfaces are cleaned.

### III.     LEGAL STANDARD

Summary judgment is authorized where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The non-movant must present more than a scintilla of evidence in support of the non-movant's position. A jury must be able reasonably to find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

### IV.     ANALYSIS

"In analyzing a maritime tort case, we rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (internal citation omitted). In

order to plead a negligence claim, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered the actual harm." *Id.* (internal citation omitted). In a maritime case, the duty is one of "reasonable care." *Id.* (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959) ("It is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.")); *see also Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (holding that "the benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where, [], the menace is one commonly encountered on land and not clearly linked to nautical adventure"). "In this circumstance, a cruise ship operator's liability 'hinges on whether it knew or should have known' about the dangerous condition." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe*, 867 F.2d at 1322).

"A maritime plaintiff can establish constructive notice with evidence that the defective condition exist[ed] for a sufficient period of time to invite correct measures." *Guevara*, 920 F.3d at 720 (internal citations and quotations omitted). A plaintiff can also show a defendant had constructive notice of the defective condition by presenting "evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (citing *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)); *see also Taiariol v. MSC Crociere S.A.*, 677 Fed. Appx. 599, 601-602 (11th Cir. 2017). The Eleventh Circuit has also held that a plaintiff created a genuine dispute of material fact as to a

4

cruise line's notice of an alleged dangerous condition where the plaintiff presented the following evidence: (1) testimony of cruise line employees that "warning signs were sometimes posted on the pool deck after rain," *see Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1289 (11th Cir. 2015); (2) "a safety video that [d]efendant played on the televisions in passenger cabins that warned passengers that the ship's decks could be 'very slippery,'" *see Frasca v. NCL (Bahamas) Ltd.*, 654 Fed. Appx. 949, 953-54 (11th Cir. 2016); and (3) a "watch your step" warning sign that warned of the dangerous condition, the step down, *see Guevara*, 920 F.3d at 722.

MSC Cruises maintains that summary judgment should be entered in its favor on Francis' remaining claims for negligent maintenance and negligent design because it was not on notice of the alleged dangerous condition, the watermelon on the floor, and there is no evidence that it designed the offending portion of the vessel.

On the other hand, Francis characterizes the dangerous condition as MSC Cruises' deck material being "dangerously slippery." In her Amended Complaint, as noted by the Eleventh Circuit, Francis includes a negligent maintenance claim, alleging that MSC Cruises breached its duty to her by "[f]ailing to reasonably inspect the deck material, discover it was unreasonably slippery, and make it safer." (D.E. 75 ¶ 96 f.). Similarly, for her negligent design claim, Francis alleges MSC Cruises breached its duty to her by "[c]hoosing and/or approving a deck material that was unreasonably slippery" and "[c]hoosing and/or approving a deck material that was unreasonably slippery when food and/or liquids was on it." *Id.* ¶ 96 d-e.

Accordingly, when determining whether summary judgment is appropriate on her remaining negligence theories, the Court must determine, as a preliminary matter, whether Francis has presented sufficient evidence to create a genuine dispute of material fact as to whether MSC

Cruises knew or should have known that the deck material on the *Divina* was unreasonably slippery. *See Guevara*, 920 F.3d at 720.

### A. Negligent Maintenance

It is well-settled that, as a prerequisite to imposing liability on a negligent maintenance claim, a cruise ship operator must be on notice of the allegedly dangerous condition. *See Guevara*, 920 F.3d at 723; *see also Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358-59 (11th Cir. 1990) (holding that "[t]he district court's instruction clearly went beyond the *Keefe* standard" because "the jury may have found [the cruise line] liable on the basis of . . . mere creation or maintenance of a defect," without showing that the cruise line was on notice of the condition).

Here, Francis claims that the following evidence put MSC Cruises on notice of the unreasonably slippery deck material onboard the *Divina*: (1) industry standards; (2) a safety video, and (3) MSC Cruises' policies, which included instructing crew members that the floors of its ships can be slippery when "water, wax, food, etc." gets on them.

### 1. Industry Standards

Francis first argues that "[c]onstructive notice can be shown through the failure of the ship to meet industry standards." However, the Eleventh Circuit cases cited by Francis stand for the proposition that a defendant cruise line's failure to follow industry standards is probative of the standard of care, not that the defendant had notice of a dangerous condition based on the failure to follow an industry standard. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1269-70 (11th Cir. 2020) (holding that expert's testimony that cruise line's maintenance of a walkway did not adhere to industry standards created a genuine dispute of material fact and noting that such testimony was relevant to the standard of care)[2]; *Sorrels*, 796 F.3d at 1282 ("As we have previously held,

---

[2] In *Carroll*, when discussing the plaintiff's failure to warn claim, the Eleventh Circuit held that the district court erred in granting summary judgment in favor of the cruise line because there was

6

'[e]vidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence.'") (quoting *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180 (5th Cir. 1975)).³ In *Carroll* and *Sorrels*, there was record evidence, other than a cruise line's failure to follow industry standards, that created a genuine dispute of material fact as to whether the defendant cruise line was on notice of the alleged dangerous condition. *Carroll,* 955 F.3d at 1266 (Cruise line adopted "policy of keeping the chairs in-line and/or in the upright position and instructing employees to ensure that [the chairs] are not blocking the roadway—due to a known danger."); *Sorrels*, 796 F.3d at 1289 (Testimony of cruise line employees that "warning signs were sometimes posted on the pool deck after rain."). Thus, the Court does not read *Carroll* and *Sorrels* as standing for the proposition that a cruise line's failure to adhere to industry standards, in and of itself, is sufficient to put a cruise line on notice of an alleged dangerous condition.

Another binding Eleventh Circuit case, *Guevara v. NCL (Bahamas) Ltd.*, cited by MSC Cruises, is also not particularly helpful here because it did not involve industry standards. 920 F.3d 710. In *Guevara*, the plaintiff claimed that he could not read the "watch your step" sign because the light bulb above the sign was out. *Guevara*, 920 F.3d at 715. The Eleventh Circuit affirmed

---

evidence of notice, namely, that the cruise line "ha[d] taken corrective measures—i.e., adopting a policy of keeping the chairs in-line and/or in the upright position and instructing employees to ensure that [the chairs] are not blocking the roadway—due to a known danger." *Carroll*, 955 F.3d at 1266.

³ In *Sorrels*, the Eleventh Circuit noted that the testimony of cruise line employees that "warning signs were sometimes posted on the pool deck after rain—viewed in the light most favorable to [the plaintiff], [was] enough to withstand summary judgment as to notice." *Sorrels*, 796 F.3d at 1289. There, "the issue [was] whether [the cruise line] had actual or constructive knowledge that the pool deck where [the plaintiff] fell could be slippery (and therefore dangerous) when wet, and whether it negligently failed to post a warning sign after the rain that preceded [the plaintiff's] accident." *Id.* at 1288 (internal citations omitted).

the district court's grant of summary judgment on the plaintiff's negligent maintenance claim, holding that the plaintiff "failed to adduce evidence proving that [the cruise line] had actual or constructive notice that the subject light bulb was out on the night that [the plaintiff] fell." *Id.* at 723. The Eleventh Circuit reasoned that the plaintiff had "not point[ed] to any prior passenger complaints or reported issues about the ship's lighting that would alert [the cruise line] to any potential safety concern." *Id.* The court also considered record evidence showing that the cruise line "retained four electrical engineers who were responsible for inspecting the lighting on the [cruise ship] at 8:00 a.m. and 7:00 or 8:00 p.m. each day." *Id.* Because of the routine inspections and the plaintiff's failure to "identify when the light when out, [the plaintiff] [] failed to make a sufficient showing that the dangerous condition was present for a period of time so lengthy as to invite corrective measures." *Id.* (internal citations and quotations omitted). As a result, "the district court did not err in concluding that [the plaintiff] failed to create a triable issue of fact on whether [the cruise line] had notice of the allegedly dangerous condition posed by the unilluminated light." *Id.*

The other cases cited by Francis are also distinguishable. *Galentine* involved a claim that the cruise line was negligent in operating an automatic sliding door and that the cruise line had not operated the doors "according to the manufacturer's installation manual or industry standards." *See Galentine v. Holland America Line Westours, Inc.*, 333 F.Supp.2d 991, 993 (W.D. Wash. 2004). There, the district court found that the plaintiff presented evidence that "a reasonable jury could conclude that [d]efendant had constructive notice based on the fact that [d]efendant's chief electrician state[d] that he inspected the doors weekly." *Id.* at 997. The district court reasoned that "[b]ased on this disputed evidence alone, summary judgment [was] not appropriate." *Id*. Thus, unlike in Francis' case, where there is no record evidence that MSC Cruises inspected the deck

8

material prior to Francis' incident, the cruise line's weekly inspection of the doors in *Galentine* was record evidence that created a genuine dispute of material fact as to whether the cruise line had constructive notice of the dangerous condition—the doors closed faster than allowed by industry standards and "[t]he position of the presence sensors (which trigger[ed] the doors to stay open) d[id] not meet industry standards." *Id.*

*Cook* is also distinguishable because the plaintiff's claims there were for negligent failure to warn and negligent design, not negligent maintenance. *see Cook v. Royal Caribbean Cruises, Ltd.*, Case No. 11-20723-CIV, 2012 WL 1792628, at *1 (S.D. Fla. May 15, 2012). The court in *Cook* denied in part the defendant's motion *in limine* to exclude certain industry guidelines, reasoning that "advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Id.* at *3 (citing *Muncie*, 519 F.2d 1179). The court found that Draft Passenger Vessel Accessibility Guidelines in that case "could be evidence relating to the applicable standard of care and notice." *Id.* at *4. Specifically, as to notice, the court reasoned that the "[p]laintiff might [] be able to demonstrate that the draft guidelines somehow support her theory that [d]efendant was on notice that the design of the change in elevation outside the restaurant was unreasonably dangerous to passengers." *Id.*[4]

---

[4] While not cited by Francis, the district court in *Donlon* found that a genuine dispute of material fact existed as to the defendant's notice of an alleged dangerous condition based on an industry standard, but the cause of action at issue there involved a failure to warn claim. *See Donlon v. Gluck Group, LLC*, Case No. 09-5379 (JEI/KMW), 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011). In *Donlon*, the district court denied a stair manufacturer's motion for summary judgment, reasoning that "the [American Society for Testing and Materials] standards at the time of construction and distribution of the vessel [houseboat] put [the manufacturer] on constructive notice of the potential danger of the stairs." *Id.*

The court in *Cook* cited *Donlon* for the proposition that a jury could consider non-binding industry standards to conclude stairs were defectively designed and such standards put a defendant on notice. *Cook*, 2012 WL 1792628, at *3 (citing *Donlon*, 2011 WL 6020574, at *6). Both cases are distinguishable from Francis' case because they involved failure to warn claims.

Most recently, via a notice of supplemental authority, Francis cites to *Andersen v. Royal Caribbean Cruises, Ltd.*, Case No. 19-cv-24639, 2021 WL 2414151 (S.D. Fla. June 14, 2021) where the district court recently denied a cruise line's motion for summary judgment on a passenger's negligent failure to warn and negligent selection and maintenance of flooring claims. However, that slip and fall case is factually distinguishable because the defendant cruise line there admitted that it had actual notice of the water leak in the ceiling of the passenger's cabin suite. *Andersen*, 2021 WL 2414151, at *8. And, as noted by the district court there, "evidence that an allegedly dangerous condition failed to comply with industry standards, **together with other evidence of notice**, can be used to establish constructive notice." *Id.* at *9 (emphasis added) (citing *Bunch v. Carnival Corp.*, 825 F. App'x 713, 715-16 (11th Cir. 2020)). *Andersen* is distinguishable because, unlike the cruise line in that case, here, MSC Cruises has not admitted that it was on notice of the alleged unreasonably slippery deck material onboard the *Divina.* In this case, MSC Cruises maintains that the cited industry standards, alleged safety video, and its policies did not put it on notice of any alleged dangerous condition.

Moreover, in *Holderbaum*, the district court found that the cruise line's failure to follow industry standards was evidence of constructive notice, but that case is also distinguishable. *See Holderbaum v. Carnival Corp.*, 87 F.Supp.3d 1345, 1355 (S.D. Fla. 2015). In that case, the district court found that the "[p]laintiff ha[d] presented evidence that the at-issue stairs violated voluntary safety standards which, although non-binding, may be used as evidence of Defendant's constructive knowledge." *Id.* at 1355, 1368.[5] Those standards included American Society for Testing and Materials, which read, "[c]arpet on floor surfaces shall be routinely inspected…Periodic inspection is particularly important at step nosing edges." *Id.* at 1354.

---

[5] The district court in *Holderbaum* cited to *Cook* and *Donlon* for this proposition. *Holderbaum*, 87 F.Supp.3d at 1355, 1358.

Notably, when discussing the plaintiff's negligent maintenance theory, the district court noted that "the plaintiff [] provided evidence of industry standards recommending regular inspections of the very location that allegedly caused [p]laintiff's fall," as well as "evidence that [d]efendant did *not* periodically inspect the carpet." *Id.* at 1358 (emphasis in original). *Holderbaum* is distinguishable because Francis does not argue that the relevant industry standards here required periodic inspections of MSC Cruises' deck material onboard the *Divina* or that MSC Cruises failed to conduct any inspections, as required by the industry standards.

The Court finds the Eleventh Circuit panel decisions in *Sutton v. Royal Caribbean Cruises Ltd.*, 774 Fed. Appx. 508, 512 (11th Cir. 2019) and *Wolf v. Celebrity Cruises, Inc.*, 683 Fed. Appx. 786, 795 (11th Cir. 2017) instructive here. The panel in *Sutton* considered whether an "[expert's] opinion created a genuine issue of material fact as to whether [the cruise line] was on notice that it needed to inspect the bolts on [its] [lighting] machines." *Sutton*, 774 Fed. Appx. at 512. There, one of the cruise line's lighting machines, which was "suspended above the dance floor," fell and landed on the plaintiff's head. *Id.* at 509. In response to the cruise line's motion for summary judgment, the plaintiff submitted an expert's opinion that "the bolts on the lighting machines would have loosen over time due, in part, to 'sound vibration,' and that [the cruise line], had it been following an industry standard inspection schedule, would have detected those loosening bolts." *Id.* at 512. As such, the "[plaintiff] argue[d] that [the expert's] opinion gave rise to a reasonable inference that 'the defective condition existed for a sufficient period of time to invite corrective measures,' the first *Guevara* means of establishing constructive notice." *Id.* (internal citations omitted). The *Sutton* court held that the "expert's opinion supported no reasonable inference that [the cruise line] should have known about an allegedly dangerous condition," reasoning that even if industry standards prescribed quarterly inspections, the opinion did not support the inference

that such inspections would have detected the dangerous condition (the loosening bolts), especially considering that the cruise line inspected the lighting machines "two months—less than a quarter—before the incident." *Id.*

The panel in *Wolf* affirmed the grant of summary judgment in favor of a cruise line because it had no notice of any dangerous conditions that existed on a shore excursion, reasoning that the plaintiff "failed to present sufficient evidence that the [Associations for Challenge Course Technology] regulations reflect[ed] industry customs or standards" and the expert failed to "provide further details, such as the timing or frequency of such an inspection." *Wolf*, 683 Fed. Appx. at 795. There, the plaintiff "argue[d] that [the cruise line] had a duty to conduct regular safety inspections of [the shore excursion company's] operation and therefore should have known of any dangerous conditions in its facilities or services." *Id.* The court rejected the plaintiff's argument, holding that the plaintiff failed to show that the regulation was an industry standard and noting that the plaintiff's expert did not provide details related to "the timing or frequency of [] an inspection" required by the regulation. *Id.*[6]

---

[6] In other instances, both unpublished decisions, the Eleventh Circuit has not reached the issue of whether industry standards put a cruise line on notice of a danger. *See Frasca v. NCL (Bahamas), Ltd.*, 654 Fed. Appx. 949, 953 (11th Cir. 2016); *see also Bunch v. Carnival Corp.*, 825 Fed. Appx. 713, 717 (11th Cir. 2020). The plaintiff in *Frasca* argued that there was record evidence showing the defendant was on notice of the deck's slippery condition: (1) a safety video warning of the dangerous condition; (2) "testimony that there were prior slip and falls on the same surface"; and (3) "an expert report concluding that [d]efendant's decks did not meet industry standards for how slippery a cruise ship deck should be." *Frasca*, 654 Fed. Appx. at 953. The Eleventh Circuit did not address whether the expert report put the defendant on notice because the safety video alone created a genuine dispute of material fact as to whether the defendant had notice of the slippery deck. *Id.*

Similarly, the passenger in *Bunch* argued that the cruise line was on notice of dangerous condition because of prior slip and falls, warning signs and stripped tape on certain thresholds, and "consensus industry standards that a four-inch threshold was too high." *Bunch*, 825 Fed. Appx. at 717. The Eleventh Circuit did not reach the issue of whether the industry standards placed the cruise line on notice because "[t]he earlier trip and falls [], and the warnings [], [were] sufficient

After consideration of the panel decisions in *Sutton* and *Wolf*, and district court's decision in *Holderbaum*, the Court finds that industry standards may, in some cases, show that a "defective condition existed for a sufficient period of time to invite corrective measures." However, in order for the industry standards to put a defendant on notice of an alleged dangerous condition, which was the result of the defendant's negligent maintenance of an area or object, a plaintiff must put forth evidence of industry standards related to "the timing or frequency" of a required inspection, *see Wolf*, 683 Fed. Appx. at 795, and such evidence must raise a "reasonable inference that [the cruise line] should have known about an allegedly dangerous condition," *see Sutton*, 774 Fed. Appx. at 512.

In this case, Francis has proffered Dr. Reza Vaghar's expert opinion that MSC Cruises failed to adhere to the American Society for Testing and Materials' standard for a coefficient of friction of .6 as his test revealed that the deck material had a coefficient of friction of .35. However, nowhere in Francis' responses in opposition to MSC Cruises' motion for summary judgment and statement of material facts (D.E. 91, 92) does she identify any industry standard requiring certain inspections of a cruise ship's deck material, or explain how Dr. Vaghar's opinion would "support the inference that such inspections [in accordance with industry standards] would have detected the dangerous condition," the unreasonably slippery deck material in this case. *Sutton*, 774 Fed. Appx. at 512. Thus, the Court finds that Francis has failed to present sufficient evidence showing that an industry standard put MSC Cruises on notice of the alleged dangerous condition—the unreasonably slippery deck material onboard the *Divina*.

---

to show a genuine issue of material fact about [the cruise line's] actual or constructive knowledge of the dangerous condition." *Id.*

**2. Safety Video**

Next, Francis claims that "MSC [Cruises] admits that it plays a safety video on the *Divina* that tells passengers that the decks can be slippery when water, food, etc. is on them." (D.E. 92, at 5); *see also* (D.E. 91 ¶ 36). Yet, as pointed out by MSC Cruises in its reply, Francis did not attach the interrogatory responses from another lawsuit, *Shaver v. MSC Cruises (USA), Inc., et al.,* Case No. 14-cv-62416-BB (Bloom, J.), that supposedly support this proposition. Further, MSC Cruises states that while there was a safety video, it "contains absolutely no mention of food, interior flooring, or the area where [Francis] claims she fell" and, as a result, "the safety video is not evidence of notice in this case where [Francis] claims she slipped on watermelon in an interior corridor." (D.E. 97, at 5). *See Guevara*, 920 F.3d at 721 ("Not all warning signs will be evidence of notice; there must also be a connection between the warning and the danger."); *see also Krug v. Celebrity Cruises, Inc.*, 745 Fed. Appx. 863, 867 (11th Cir. 2018) (holding that summary judgment was appropriate because cruise line had no notice of the alleged dangers associated with cruise line passengers rushing to the stage in order to win a game and host's statement prior to game of "safety is always first" was a "general safety instruction" that did not specifically warn of the dangerous condition—"the accelerating and decelerating in a small space on a ship").

Here, Francis, the non-moving party, has failed to meet her burden at the summary judgment stage, as she has failed to establish the essential elements of her case on which she will bear the burden of proof at trial. *Celotex*, 477 U.S. 317. Francis cites to interrogatory responses in a closed, 2014 case that supposedly stand for the proposition that MSC Cruises was on notice of the alleged dangerous condition—the unreasonably slippery deck material—but fails to provide a copy of the response that she wants the Court to rely on as record evidence of MSC Cruises' notice. Moreover, even if she did, Francis has failed to provide sufficient evidence sufficient to create a

genuine dispute of material fact as to whether MSC Cruises was on notice of its unreasonably slippery deck material because the video does not mention that the deck material is unreasonably slippery, but only that the flooring can be slippery when food or water is on it. *Cf. Frasca*, 654 Fed. Appx. at 953 (holding that plaintiff passenger raised a genuine dispute of material fact as to the defendant cruise line's notice about the deck's "slippery condition" when wet where the plaintiff pointed to "a safety video that [d]efendant played on the televisions in passenger cabins that warned passengers that the ship's "outside decks will get wet from salt spray and sea air *and can become very slippery*."") (emphasis in original). In Francis' own words, "[t]he dangerous condition here is a permanent and ongoing condition: a slippery floor surface, which fails to meet industry standards." (D.E. 92, at 7). Thus, even if Francis submitted such a video, it would not create a genuine dispute of material fact as to whether MSC Cruises knew or had reason to know that its deck material could become unreasonably slippery when water or food is on it.

### 3. MSC Cruises' Procedure

Lastly, Francis points to MSC Cruises' policies, titled "Housekeeping 'WET FLOOR' WARNING SIGNS" to show MSC Cruises was on notice that its deck material was unreasonably slippery (D.E. 92, at 5). The standard procedure lists its objective as "ensur[ing] that appropriate warning signs are placed correctly when walking surfaces are wet" and provides that "[w]hen floors in any Guest or crew area are washed, or made slippery by intention or accident (water, wax, food, etc.), approved safety signs are to be used." (D.E. 91-14, at 15).

This standard procedure does not create a genuine dispute of material fact as to MSC Cruises' notice of the alleged dangerous condition because the procedure does not specifically warn of the dangerous condition alleged by Francis—the unreasonably slippery deck material. As such, because there is no "connection between the warning and the danger," the policies here do

15

not show that MSC Cruises was on notice of the unreasonably slippery condition of its deck material onboard the *Divina*. *See Guevara*, 920 F.3d at 721; *see also Krug*, 745 Fed. Appx. at 867.

In this case, "[Francis] [has] failed to create a triable issue of fact on whether [MSC Cruises] had notice of the allegedly dangerous condition posed by [its unreasonably slippery floors]." *Guevara*, 920 F.3d at 723. As to industry standards, Francis has failed to submit sufficient evidence showing that inspections are required, the timing and/or frequency for such inspections, *see Wolf*, 683 Fed. Appx. at 795, and the requisite evidence that "support[s] the inference that such inspections would have detected the dangerous condition," the unreasonably slippery deck material in this case. *Sutton*, 774 Fed. Appx. at 512. As to the safety video, Francis has failed to establish the essential elements of her case on which she will bear the burden of proof at trial, *Celotex*, 477 U.S. 317, by not attaching a copy of the interrogatory response or video showing that MSC Cruises warned that its floors could be very slippery when water or food are on them. Nevertheless, like MSC Cruises' standard procedure for warning signs when floors are wet, the alleged safety video does not put MSC Cruises on notice of the alleged dangerous condition it supposedly negligently maintained because it does not mention that the deck material was unreasonably slippery. For these reasons, MSC Cruises' motion for summary judgment on Francis' negligent maintenance claim is granted.

### B. Negligent Design

MSC Cruises also moves for summary judgment on Francis' negligent design claim on two grounds: (1) Francis has failed to present any evidence that MSC Cruises was on notice of the dangerous condition, the deck material onboard the *Divina* was unreasonably slippery, *see Groves v. Royal Caribbean Cruises, Ltd.*, 463 Fed. Appx. 837, 837 (11th Cir. 2012) ("Under the law in this circuit, [the cruise line] can be liable only for negligent design of the dining area if it had actual

or constructive notice of such hazardous condition.") (citing *Keefe*, 867 F.2d at 1322); and (2) Francis has failed to present record evidence showing that MSC Cruises designed the offending portion of the vessel, *see Rodgers v. Costa Crociere, S.P.A.*, 410 Fed. Appx. 210, 213 (11th Cir. 2010).

As previously noted, Francis has failed to submit sufficient evidence to create a genuine dispute of material fact as to whether MSC Cruises was on notice of the alleged dangerous condition: the deck material being unreasonably slippery. Notably, in response to the motion for summary judgment, Francis does not raise any additional arguments as to notice when responding to MSC Cruises' arguments in favor of granting summary judgment on the negligent design claim (D.E. 92, at 7-8). Hence, MSC Cruises' motion for summary judgment on Francis' negligent design claim is granted for the reasons previously stated. *See Groves*, 463 Fed. Appx. at 837 (citing *Keefe*, 867 F.2d at 1322).

Alternatively, summary judgment is also appropriate on Francis' negligent design claim because she has failed to submit record evidence sufficient to create a genuine dispute of material fact because "there [is] no evidence whatsoever that [MSC Cruises] actually designed the [deck material]." *See Rodgers*, 410 Fed. Appx. at 212. The panel in *Rodgers* "conclude[d] that the district court did not abuse its discretion in granting summary judgment on [the passenger's] negligent design theory of liability, where there was no evidence whatsoever that [the cruise line] actually designed the stairs or the hand rails." *Id.* In that case, the plaintiff passenger slipped and fell while on a cruise ship. *Id.* at 211. In affirming the grant of summary judgment, the *Rodgers* court reasoned, "[b]ecause neither the facts nor the law support [the passenger's] negligent design theory, we conclude the district court properly disposed of this unsubstantiated claim prior to trial." *Id.* at 212.

Here, Francis only points to an annual report by "MSC Cruises Group" that reads, "[e]ach time we set out to develop a new class of ship, we start from a blank sheet and draft a completely new prototype" and "[w]e fully revisit the marine architecture and design of the ship in all its aspects." (D.E. 91-8, at 11 - p. 18 of the report). This report does not create a genuine dispute of material fact as to whether MSC Cruises "actually designed" the deck material used onboard the *Divina*. *See Rodgers*, 410 Fed. Appx. at 212. As pointed out by MSC Cruises in its reply, the report does not mention the corridor where Francis fell or the *Divina*. Thus, summary judgment on Francis' negligent design theory is also appropriate on this basis.[7]

## V. CONCLUSION

For the foregoing reasons, MSC Cruises' Motion for Summary Judgment (D.E. 82) is granted on Francis' negligent maintenance and design theories and all other pending motions are denied as moot. The Court shall enter final judgment in favor of MSC Cruises and against Francis by separate order.

DONE AND ORDERED in Chambers at Miami, Florida, this 29th of June 2021.

*[signature: Federico A. Moreno]*

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

---

[7] The Court also notes that Francis does not address the authority cited by MSC Cruises in its motion for summary judgment that stands for the proposition that "[t]he *Divina* was designed and built in 2012 by STX Europe at Saint-Nazaire, France." *See Gorczyca v. MSC Cruises, S.A.*, Case No. 15-61734, 2016 WL 10879273, at *3 (S.D. Fla. July 26, 2016), *aff'd* 715 Fed. Appx. 919 (11th Cir. 2017).